## CASE OF THE SEWING MACHINE COMPANIES.

A case in which the plaintiff is a citizen of the State where the suit is brought and two of the defendants are citizens of other States, a third defendant being a citizen of the same State as the plaintiff, is not removable to the Circuit Court of the United States under the act of March 2d, 1867, upon the petition of the two foreign defendants.

ERROR to the Supreme Judicial Court of Massachusetts.

The Florence Sewing Machine Company, a Massachusetts corporation, sued, in assumpsit, in the court just named, three other sewing machine companies; one of them, like itself, a Massachusetts corporation, another a Connecticut corporation, and the third a New York corporation. The writ was returnable to April Term, 1871.

The purpose of the suit was to recover of the three defendant corporations an alleged overpayment which the plaintiff company alleged that it had made to them, under a license agreement which they had granted to it. Service of the writ was made upon all the defendants, according to the laws of Massachusetts; upon the two foreign corporations by attachment of the property of each within the State, &c. The Massachusetts corporation which was thus sued appeared at the April Term, 1871, by counsel, and filed its answer, and at the April Term, 1872, the Connecticut and New York corporations did the same.

At the said April Term, 1872, and before the trial of the case, the Connecticut corporation filed a petition, under the act of March 2d, 1867, hereinafter particularly set forth,* for the removal of the cause to the Circuit Court of the United

---

* *Infra*, p. 557–8.

States for the District of Massachusetts, assigning as a reason that the plaintiff corporation was a citizen of the State of Massachusetts, and that it the defendant corporation was a citizen of the State of Connecticut; that a controversy existed between them in the said suit, and that the petitioner had reason to believe, and did believe, that from prejudice and local influence it would not be able to obtain justice in the State court. An affidavit to this effect was also made in its behalf, by its president, and filed; and also a bond with sufficient sureties as required by law.

On the same day, a similar petition, affidavit, and bond were made and filed by and in behalf of the New York corporation.

Subsequently, at the same term, and before the trial of the cause, these petitions were heard before the presiding judge. The judge (Ames, J.) refused to grant the petitions, and ordered the case to proceed to trial, reserving the question, whether his refusal was right, for the consideration of the whole bench. The defendants excepted. A verdict was given for the plaintiff.

The exception was afterwards heard before the whole bench of the court below, which held that the petition to remove the case was rightly refused. Final judgment having been entered accordingly, the case was now brought here by the three defendant corporations.

The question thus presented was whether a case in which the plaintiff is a citizen of the State where the suit is brought and two of the defendants are citizens of other States, a third defendant being a citizen of the same State as the plaintiff, is removable to the United States Circuit Court upon the petition of the two foreign defendants under the statute of March 2d, 1867, upon their complying with the several requirements of that statute.

To understand the arguments of counsel and the opinion of the court, it is necessary to refer to certain clauses of the Constitution, and of two acts of Congress preceding that of 1867: one, the Judiciary Act of 1789; the other, an act of 1866.

The following clauses of the Constitution are referred to:

"ARTICLE III.—SECTION 2. The judicial power shall extend:

"To all *cases* in law and equity arising under this Constitution, the laws of the United States, and treaties made or which shall be made under their authority.

"To all *cases* affecting ambassadors, other public ministers, and consuls.

"To all *cases* of admiralty and maritime jurisdiction.

"To *controversies* to which the United States shall be a party.

"To *controversies* between two or more States; between a State and citizens of another State; *between citizens of different States; . . .* between *citizens of the same State,* claiming lands under grants of different States, and between a State or the citizens thereof and foreign states, citizens, or subjects.

"In all *cases* affecting ambassadors, other public ministers, and consuls, and *those* in which a State shall be party, the Supreme Court shall have original jurisdiction. In all the other *cases beforementioned* the Supreme Court shall have appellate jurisdiction," &c.

The following are the acts of Congress which bear on the case:

First. The Judiciary Act of 1789, which thus enacts:

"SECTION 11. The Circuit Courts shall have original cognizance, concurrent with the courts of the several States, of all *suits* of a civil nature, at common law or in equity, where . . . the *suit is between a citizen of the State where the suit is brought, and a citizen of another State.*

"SECTION 12. If a *suit* be commenced in any State court against an alien, or *by a citizen of the State in which the suit is brought against a citizen of another State,* and the matter in dispute exceeds the aforesaid sum of $500, . . . and the defendant shall *at the time of entering his appearance* in such State court file a petition for the removal of the cause for trial into the next Circuit Court, to be held in the district where the suit is pending, . . . and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of said process against him, and also for his there appearing, . . . it shall then be the duty of the State court . . . to proceed no further in the cause, . . . and the said copies being entered as aforesaid in

such court of the United States, the cause shall there proceed in the same manner as if it had been brought there by original process," &c.

[These sections, as interpreted by this court,* have been always understood to apply only to those cases in which all the individuals making up the plaintiffs are citizens of the State where the suit is brought; and all the individuals making up the defendants are citizens of another State or States.]

Next came an act of July 27th, 1866, entitled " An act for the removal of causes in certain cases from State courts."†
It was thus:

" If in any *suit* . . . in any State court against an alien, or *by a citizen of the State in which the suit is brought against a citizen of another State*, and the matter in dispute exceeds the sum of . $500, . . . a citizen of the State in which the suit is brought is or shall be a defendant, and if the suit, so far as relates to the alien defendant, or to the defendant who is the citizen of a State other than that in which the suit is brought, is or has been instituted or prosecuted for the purpose of restraining or enjoining *him*, or if the suit is one in which there can be a final' determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause, then, and in every such case, the alien defendant, or the . defendant who is a citizen of a State other than that in which the suit is brought, may, *at any time before the trial or final hearing of the cause*, file a petition for the removal of the cause as against him into the next Circuit Court of the United States, to bo held in the district where the suit is pending, and offer good and sufficient surety for his entering in such court . . . copies' of said process against him, and of all pleadings, depositions, testimony, and other proceedings in said cause affecting or concerning him, and also for his there appearing, . . . and it shall be thereupon the duty of the State court to accept the surety and proceed no further in the cause as against the defendant so applying for its removal, . . . and the said copies being entered

---

* Strawbridge *v.* Curtiss, 3 Cranch, 267 ; Coal Company *v.* Blatchford, 11 Wallace, 172.

† 14 Stat. at Large, 306.

as aforesaid in such court of the United States, the cause shall there proceed in the same manner as if it had been brought there by original process against the defendant who shall have so filed a petition for its removal as above provided. . . .

"And such removal of the cause, as against the defendant petitioning therefor, into the United States court, shall not be deemed to prejudice or take away the right of the plaintiff to proceed at the same time with the suit in the State court as against the other defendants, if he shall desire to do so."

Finally came the act of March 2d, 1867,* upon which the application for removal in the case was made. Its title is,

"An act to *amend* an act entitled 'An act *for the removal of* causes in certain cases from State courts,'" approved July 27, 1866.

It runs thus:

"*Be it enacted,* That the act entitled 'An act for the removal of causes in certain cases from State courts,' approved July 27th, 1866, be and the same is hereby amended as follows: That where a suit is now pending, or may hereafter be brought in any State court, in which there is *controversy* between a citizen of the State in which the suit is brought and a citizen of another State, and the matter in dispute exceeds the sum of $500, . . . such citizen of another State, *whether he be plaintiff or defendant,* if he will make and file in such State court an affidavit, stating that he has reason to and does believe that from prejudice or local influence he will not be able to obtain justice in such State court, may, *at any time before the final hearing or trial of the suit,* file a petition in such State court for the removal of the suit into the next Circuit Court of the United States, to be held in the district where the suit is pending, and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit, and doing such other appropriate acts as, by the act to which this act is amendatory, are required to be done upon the removal of a suit into the United States court; and it shall be, thereupon, the duty of the State court to accept the surety and proceed no further in the suit;

---

* 14 Stat. at Large, 558.

and the said copies being entered as aforesaid in such court of the United States, the suit shall there proceed in the same manner as if it had been brought there by original process," &c.*

The plaintiff in error asserted that under the last-named act the case was removable upon the petition of the two foreign defendants, and that it was error in the State court to retain and try it.

The defendants in error, on the other hand, asserted that under this act, as under the eleventh and twelfth sections of the Judiciary Act of 1789, the right of removal was confined to cases where the parties on one side were all citizens of one State and the parties on the other were *all* citizens of another State.

*Messrs. J. G. Abbot, B. R. Curtis, and E. Merwine, for the plaintiff in error :*

Three inquiries are involved :

1. The extent of the judicial power of the United States under the Constitution of the United States.

2. The extent to which Congress has made provision for the exercise of that power, by the act of March 2d, 1867.

3. Is the present case within the terms of that act.

I. The provision of the Constitution is as follows :

"The judicial power shall extend . . . to *controversies* between citizens of different States."

That by the word "controversies" the Constitution meant something different from "cases," is to be inferred from the fact that after using the word cases in certain instances, it uses the word controversies in others. The language of the provision is very comprehensive, and the jurisdiction which it confers necessarily includes any and every judicial controversy which may exist between citizens of different States. Speaking, as this provision of the Constitution does,

---

* It was settled by this court in Railway Company v. Whitton (13 Wallace, 270) that this act was constitutional, and also that corporations were embraced within the constitutional provision relating to controversies between citizens of different States.

in reference to judicial matters, we may say that interpreting it rightly, a "case" between parties is a "suit" between parties. There is a plaintiff and there is a defendant; and who the parties to that "case" or to that "suit" are, appears by a memorial kept in courts and known as the docket. But one party to the *case* or *suit* may have little or no interest in the *controversy*. A., a citizen of Pennsylvania, may sue B., another citizen of Pennsylvania, when B. is but a nominal defendant, and when the only person really interested as a defendant in the *controversy* is C., a citizen of New York, not a party to the "case," to the "suit," at all. The case or the suit is between A. and B.; the controversy is between A. and C.

Our case does not require us to say that such a case could be removed; we mean but to illustrate. But certainly a controversy between citizens of different States is none the less a controversy between citizens of different States because others are also parties to it. Therefore to confine the Federal jurisdiction to cases wherein the controversy is between citizens of different States *exclusively*, is to interpolate into the Constitution a word not placed there by those who ordained it, and one which materially limits and controls its express provisions.

One object of this article of the Constitution was to allay apprehensions of injustice from State prejudice, and to "form a more perfect union," by holding out to every citizen of the United States the assurance that in all judicial controversies between himself and a citizen of any other State, his controversy might be tried and determined by an impartial tribunal, and one in reference to which no fear could exist that it would be biased in favor of his adversary, by any local prejudices or considerations.

The terms of the grant of judicial power are full, general, and unequivocal, and were made so designedly, in order that the power might be commensurate with every possible exigency. The Constitution does not descend to details. It remits to Congress the duty to create (with one exception) the necessary Federal tribunals; to prescribe under what

circumstances and in what mode their jurisdiction shall be exercised; and also to determine from time to time, in view of the condition of the country, under what restrictions it shall be exercised; and whether or not the necessary or unnecessary joinder of other parties shall deprive a citizen of the opportunity to have his controversy with the citizen of another State tried by the National tribunal. The Federalist, in discussing this article of the Constitution, first treats of the absolute necessity of a National tribunal for the decision of controversies in which foreigners are concerned, and then proceeds thus:

"In order to the inviolable maintenance of that equality of privileges and immunities to which the citizens of the Union will be entitled, the National judiciary ought to preside in all cases in which one State or its citizens are opposed to another State or its citizens. To secure the full effect of so fundamental a provision *against all evasion and subterfuge*, it is necessary that its construction should be committed to that tribunal, which, having no local attachments, will be likely to be impartial between the different States and their citizens, and which, owing its official existence to the Union, will never be likely to feel any bias inauspicious to the principles on which it is founded."*

A construction which would forever preclude the possibility of a resort to a Federal tribunal in controversies between citizens of different States, simply for the reason that in the same case there was also a controversy between citizens of the same State, would be in derogation of the terms of this provision of the Constitution, and subversive of the purposes which it intended to secure. Such a construction would put it in the power of the plaintiff always to deprive the citizen of another State of the right to a trial of his controversy in the Federal tribunal, by merely joining with him as co-defendant a citizen of the plaintiff's State. And thus the power to determine in which tribunal the controversy shall be tried, whether in the local and prejudiced one, or in the Federal and impartial one, is forever committed to

---

* Federalist, No. 80.

the very party against whom it was the sole purpose of this constitutional provision to afford protection.

As already said, the language used in other clauses of this judicial article of the Constitution confirms the view that the term "*controversies*," as used in this particular clause, was so employed for a purpose, and in distinction to the word " suit " or " case." A controversy between citizens of different States must exist in the suit,—and, if so, the jurisdiction will attach,—but the suit or case may not be between them exclusively. There may be other parties to it.

The same rule of construction which is applied to this clause, must govern the other clauses of this section. They are in *pari materiâ*. A reference to these clauses will show that the proposed limitation cannot be engrafted on this article without in effect annulling it.

One clause provides that the judicial power shall extend "to all cases affecting ambassadors, other public ministers, and consuls." Can it be pretended that this jurisdiction can be defeated by joining some one else as a party with an ambassador, public minister, or consul ; or because the case may affect some one else than those officers ?

Another clause provides that the judicial power shall extend " to all controversies between two or more States." Can this jurisdiction be defeated, by joining as a party defendant a private person or corporation ?

Another clause provides that, " the judicial power shall extend to all cases in law and equity arising under this Constitution, *the laws of the United States,* and treaties made, or which shall be made, under their authority."

Does the jurisdiction cease to exist in a case because other questions are involved in it than those arising under the Constitution, laws, or treaties of the United States ? It was settled in *Osborne* v. *Bank of the United States,** that the jurisdiction did not cease to exist in such a case. The question there was, whether the act of Congress, so far as it authorized the bank (created by a law of the United States) to sue

---

* 9 Wheaton, 738 ; and see Railway Company *v.* Whitton, 13 Wallace, 288.

in any Circuit Court of the United States, was constitutional. The defendant contended that it was not, and that the suit in question was not a "suit," or "case," within the meaning of the Constitution, or of the act of Congress, because several questions might arise in it which would depend on the general principles of the law, and not on any act of Congress. In other words, it was there attempted, as it is now attempted by the defendants in error, to add to this clause of the Constitution, the word "*exclusively.*" But what said Marshall, C. J.?

"If this were sufficient to withdraw a case from the jurisdiction of the Federal courts, almost every case, although involving the construction of a law, would be withdrawn; and a clause in the Constitution relating to a subject of vital importance to the government, and expressed in the most comprehensive terms, would be construed to mean almost nothing. . . . If the existence of other questions be sufficient to arrest the jurisdiction of the court, words which seem intended to be as extensive as the Constitution, laws, and treaties of the Union, which seem designed to give the courts of the government the construction of all its acts, so far as they affect the rights of individuals, would be reduced to almost nothing."

This decision applies to the provision now under discussion, and furnishes the true rule for its construction. The cases are parallel. The Federal jurisdiction is made by the Constitution to depend upon one of two things, either the nature of the subject-matter of the controversy or the character of the parties to the controversy. It extends to every case in which a question arises under its own laws, or in which a controversy exists between citizens of different States. Either one of these conditions confers the jurisdiction, and it cannot be defeated because other questions or other parties are involved in the controversy.

The decisions made upon the eleventh and twelfth sections of the Judiciary Act of 1789, do not conflict with the views here presented. Those cases all relate to the proper construction of the Judiciary Act, and not of the clause of the Constitution.

The eleventh section limited the jurisdiction of the Circuit Court to suits where an alien is a party, " or the *suit* is between a citizen of the State where the suit is brought, and a citizen of another State."

And the twelfth section limited the right of removal to " a *suit* commenced in any State court, against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State."

The Judiciary Act industriously employed the word "suit" throughout, in distinction from the broader term "controversy," used in the Constitution; and it was also expressly confined to a suit between a citizen of the State where the suit is brought, and a citizen of another State.

Nor can it be argued for this act that it was a contemporaneous declaration of the view entertained by Congress as to the extent of the judicial power created by the Constitution. It has never been so held or understood. On the contrary, it is obvious, as has been frequently stated in judicial opinions, that the Judiciary Act did not exhaust the judicial power; and that it went only so far as the condition of the country, in the opinion of Congress, then seemed to require or render expedient.

II. *Construction of the statute of March 2d*, 1867.

Having ascertained that the provision of the Constitution confers Federal jurisdiction over cases like the present, the next question is whether Congress has provided for the exercise of that jurisdiction by the act of March 2d, 1867.*

The language of this act—differing from that of the Judiciary Act, which gave the right of removal when the " *suit*" was by " a citizen of the State in which the suit was brought against a citizen of another State"—gives the right where there is a " controversy between a citizen of the State and a citizen of another State." Now, if we have ascertained the true meaning and scope of the words in the Constitution, " controversies between citizens of different States," there can be no doubt as to the true meaning of the act of

---

* See it, *supra*, p. 557-8.

1867, nor of its application to the present case. For that act, departing from the limited and technical phraseology employed in the preceding statutes, employs, for the first time, the more comprehensive language of the Constitution and legislates concerning " *controversies* between citizens of different States."

That our construction of the act of 1867 is the true one is apparent, from the language of the act itself, and from the previous legislation upon this subject.

The Judiciary Act of 1789 confined the right of removal to suits commenced " by a citizen of the State in which the suit was brought against a citizen of another State;" and also required that the petition for removal should be filed by the defendant at the time of entering his appearance. This provision, as was uniformly held, applied only to a suit between a citizen of the State in which the suit was brought and a citizen of some other State, and clearly did not apply to a case where a resident defendant was also a party. In 1866, however, a very important change took place in the legislation upon this subject, and Congress then began, under the pressure of a new exigency, to secure more completely, by appropriate legislation, to non-resident defendants their constitutional right to have their controversies tried in the Federal tribunals. The act of 1866* for the first time made provision for the removal of a suit to the Federal court by a non-resident defendant, although a citizen of the State where the suit was brought was also a defendant therein. That act made two changes in the previous law. First, it allowed the cause to be removed to the Federal court so far as the non-resident defendant was concerned, " if the suit was one in which there could be a final determination of the controversy, so far as it concerned *him*, without the presence of the other defendants as parties in the cause," but leaving the suit in the State court so far as it related to the resident defendant; and secondly, it allowed the petition for removal to be filed at any time before the

---

* See it, *supra*, p. 556.

trial, instead of requiring it to be filed with the defendant's first appearance, as in the Judiciary Act.

It was soon apparent that this act could not effect much practical change or relief, as the number of cases to which it could be applicable was very limited indeed; as cases seldom arise "in which there can be a final determination of the controversy as to one co-defendant without the presence of the other defendants as parties in the cause." Accordingly, in pursuance of the policy indicated by that act, to provide what was supposed to be a more impartial tribunal for non-resident defendants in every case, Congress passed the act of March 2d, 1867, to supply the obvious deficiencies of the statute of 1866, and to allow a non-resident to remove the cause to the Federal tribunal, whenever he had reason to believe that from prejudice or local influence he would be unable to obtain justice in the State courts, although there were other co-defendants who were residents of the State in which the suit was brought. The act was a fruit of the rebellion.

The statute of 1867 cannot be confined to those cases where non-residents are the only defendants without violating its language and intent.

(*a.*) It is an act "*to amend the act of* 1866." Now, the sole purpose of the act of 1866 was to provide for a removal of suits in behalf of non-resident defendants in those cases in which *resident* parties were also defendants. The obvious purpose of the statute of 1867 was to add another case to the list, which might be removed by non-resident defendants, although resident parties were also defendants; and it was thus, as it professed to be, and thus only could it be, an amendment of the act of 1866.

Neither the act of 1866 nor the Judiciary Act, section twelve, is repealed by the statute of 1867. All subsist and each provides for a distinct case, thus:

The statute of 1789, for removal where the defendants are all non-residents; the statute of 1866, where part only are non-residents, but the cause is divisible as to them; the statute of 1867, where part only are also non-residents, but

where local prejudice exists, and for that reason the entire cause is made removable.

(*b.*) Under the statute of 1789, non-residents (if the only parties defendant) can now remove a case to the Federal tribunal, under the provisions of that act, without affidavit, and without the cause of local prejudice. If the statute of 1867 is also to be confined to the same class of cases (where all the defendants are non-residents), then, as it requires cause and affidavit for removal, it is a restriction upon the right of removal as originally given by the statute of 1789; a result which is obviously absurd.

(*c.*) The peculiar phraseology of the statute of 1867 fairly admits of no other interpretation than that which we give it.

The language is, that " where a suit is now pending, or may hereafter be brought in any State court, *in which there is controversy between a citizen of the State in which the suit is brought and a citizen of another State,*" &c.

The language italicized is used for the first time in this act, and is significant.

The language of the statute of 1789 was, " if a suit be commenced *by a citizen* of the State, &c., against a citizen of another State," &c.; but here the striking phrase is, " where a suit is now pending, . . . *in which there is controversy between a citizen,*" &c. This language excludes the idea that the suit must necessarily be one in which all the parties on one side are citizens of one State and all the parties on the other are citizens of another State. It is enough, however the parties may be distributed as to citizenship, if in the suit there is controversy between a citizen of one State, as plaintiff, and a citizen of another as one of the defendants. If there are these parties to the controversy, the right of removal exists, although there may be other parties to the suit and the controversy. The statute does not limit the right of removal to the case where a citizen of one State, as plaintiff, and the citizen of another State, as defendant, are the only parties to the controversy.*

* Johnson *v.* Monell, Woolworth, 390; Fields *v.* Lamb et al., Deady, 430; Sands *v.* Smith, 1 Dillon, 290.

*Messrs. E. R. Hoar and A. L. Soulé, contra :*

I. The act of March 2d, 1867, did not mean to authorize the removal from the State court of a suit against joint defendants, one of whom, with the plaintiff, is a citizen of the State in which the suit is brought.

II. If it had so meant its purpose would have been unconstitutional.

1. The word " controversies," as used in the Constitution, is a general term, broad enough to cover all branches and technical forms of litigation, being equivalent to " suits or cases at law and in equity." It cannot have any other meaning or force than as a designation of judicial proceedings, whether those proceedings be called suits, actions, petitions, or bills in equity. " The judicial power," says Marshall, C. J., in *Osborne* v. *Bank of the United States*, " is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case." There is no " controversy" known to the judicial power under the Constitution, except the case or suit which is instituted according to the forms prescribed by law. Therefore the phrase " suit in which there is controversy between" is equivalent to the phrase " suit between." Any other interpretation would involve the idea that the courts of the United States have jurisdiction in controversies between parties outside of and apart from the suits which are in those courts.

If we are right in the interpretation of the words of the act, it results that the meaning and effect of the act have already been settled by the construction given to sections eleven and twelve of the Judiciary Act.

But it is argued that this cannot be so, because the act of 1867 is an amendment of the act of July, 1866, which provides for the removal of suits in which the plaintiff and a part of the defendants are citizens of the State in which the suit is brought.

Undoubtedly the title of an act is of value in determining what are its purpose and effect. But it is not to be used to wrest the language of the amendatory act, to a meaning

contrary to that which has been given by judicial authority to language substantially the same in former acts. And it is manifest, on reference to the title of the act of 1866, that no such strained construction is necessary to satisfy the call of the title of the act of 1867. The act of 1866 is entitled "An act for the removal of causes in certain cases from State courts." An act in amendment thereof may be in effect an act for the removal of other causes in certain cases, quite as well as an act to remove the same causes in certain other cases. And the act of 1867 has as real and as wide an operation, if construed as the defendant in error contends that it should be construed, as it would have if construed as applying only to the class of cases described in the act of 1866; indeed a much wider operation. As understood by the defendant in error, the act of 1867 works a large addition to the power of removal. The Judiciary Act provided for a removal at the time of entering appearance, by the whole party defendant, citizen of another State, the whole party plaintiff being citizen of the State in which the suit is brought. The act of 1866 provides for a partial removal at any time before final hearing or trial, when the interest of the defendants is separate and distinct, on petition of an alien defendant, if a part of the defendants are citizens of the State where the suit is brought, wherever the plaintiff may have citizenship; and on petition of a defendant, citizen of another State, where the plaintiff, and a part of defendants, are citizens of the State where the suit is brought. The act of 1867 provides for the removal, at any time before trial or final hearing, of the whole suit by the whole of either plaintiff or defendant, citizen of another State, when the whole of the adverse party has citizenship in the State where the suit is brought; this being the first provision made for removal of suit by a plaintiff.

Moreover, to adopt the construction of the act of 1867, contended for by the plaintiffs in error, would be to give to the Circuit Courts of the United States jurisdiction in a large class of cases originally brought in State courts, in which they would have no jurisdiction if originally brought

in the Circuit Courts.   And it cannot be supposed that it was the purpose of the act to extend and enlarge the juris- diction of the courts by indirection.

There is no analogy between the question here and that decided in *Osborne* v. *Bank of the United States.*   In that case, Marshall, C. J., said that, inasmuch as the bank was chartered by the United States, with specified powers and rights, and the question on which the case arose was a ques- tion as to its powers and rights, the grant in the charter of the right to sue in the Circuit Courts was within the provi- sion of the Constitution which extends the judicial power to all cases arising under the laws of the United States; and that the fact that other questions *might* arise in the progress of the case did not oust the court of its jurisdiction.

2. If the act of 1867 is construed as authorizing the re- moval of suits in which the plaintiff and a part of the indi- viduals making up the party defendant are citizens of the State where the suit is brought, the act is, in that regard, unconstitutional.   It provides for removing the suit, as to all the parties, to the Federal court, and that after the pe- tition is filed, with proper surety and the proper affidavit, it shall be the duty of the State court to proceed no farther in the suit.   This construction presupposes a jurisdiction in the United States courts of controversies between citizens of the same State, and a power to oust the State courts of jurisdiction in controversies between its own citizens, at the request of citizens of another State; and even against the will of both plaintiff and those of the defendants who are citizens of the State where the suit is brought.   We say " controversies " between citizens of the same State, because this construction of the act can be maintained only on the ground that in it the word "controversy" is used in another and more popular sense than that in which it is used in the Constitution.

The Constitution provides for jurisdiction in the United States courts in a few great classes.

1st. In *all* cases arising under the Constitution, the laws of the United States, and treaties.

2d. In *all* cases *affecting* ambassadors, other public ministers and consuls.

3d. All cases of admiralty and maritime jurisdiction.

4th. Controversies in which the United States shall be a party.

5th. Controversies between States.

6th. Controversies between a State and citizens of another State.

7th. Between citizens of different States.

8th. Between citizens of the same State, claiming lands under grants of different States.

9th. Between a State or the citizens thereof, and foreign States, citizens or subjects.

In the first, second, third, and fourth of these classes, the jurisdiction in nowise depends on the citizenship of individuals.

The fifth class relates only to States.

The sixth class relates only to controversies in which a State is a party.

In the seventh class the jurisdiction depends entirely on the citizenship of the parties.

In the eighth, on the subject-matter of the controversy.

In the first three classes, citizens of the same or of different States may be both plaintiffs and defendants.

In the fourth class, citizens of the same and of different States may be joined together in the same party to the controversy.

But it is submitted that in the *seventh* class, the individuals on one side of the controversy must all be citizens of the State in which the suit is brought; on the *other*, all citizens of another State or States.

As we have already seen, " the judicial power under the Constitution is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law," that is to say, in a suit of some kind. The suit is the " controversy" contemplated by the Constitution. And in order that the Federal courts may have jurisdiction, the suit, if the interpretation of the Constitu-

tion is to be consistent with the interpretation already and repeatedly given to the Judiciary Act, must be between citizens of one State, and no one else, on the one side, and citizens of other States, and no one else, on the other side.

We have not a separated controversy with any of the three defendants; no more than in a suit against a corporation we should have a controversy with each one of the corporators. The suit might affect each, but that would not make the suit a controversy with each. We have a controversy with the opposing parties to the suit, that is to say, with the three corporations. The controversy is the entire controversy between the parties who are parties to the suit; one side of them being a composite body over which the Constitution does not authorize the Federal courts to take jurisdiction.

Nor does the interpretation of the clause which we assert impair the end which it was designed to attain. It leaves uninterfered with, the power to legislate as to all the cases which come fully within the language of the clause; that is to say, as to all controversies which are fully and completely described as being between citizens of different States. Nor is it to be inferred that the word "controversies" is used in this clause in any other sense than that which is here contended for, from the fact that it is used in a different sense by the legislative branch of the government in 1866 or 1867. The meaning of the Constitution is not dependent on subsequent acts of Congress. But those acts are operative or invalid as they accord with or violate the provisions of the Constitution. Nor should the clause be given a wider and larger operation than its language naturally imports, under the assumption that the construction contended for by the defendant in error, impairs the end which it was designed to attain. It is said that the clause in question had for its end to protect citizens of different States from danger of injustice in the State courts through local influence or prejudice; and that viewed as a permanent grant of power to legislate, the end *may be* seriously impaired if the power to legislate is arrested merely by the

joinder of other parties. But, *non constat*, that it was the intention of the Constitution to throw this protection over citizens suing or sued in another State than their own, when citizens of the State where the suit is brought, are suing or sued with them. To assume that this is the intention of the Constitution is to beg the question. And there is no reason why such should be the intention of the Constitution. The danger to be avoided, exists only when all the individuals on one side of the suit are citizens of the State where the suit is brought, and all the individuals on the other side are citizens of another State. When citizens of the State where the suit is, are on both sides in the suit, the local prejudice or influence is destroyed, or balanced. It favors one side as much as the other.

When it is remembered that the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people, it seems clear that the construction of the clause in question by the plaintiffs in error is erroneous. That clause does not purport to extend the judicial power of the United States to controversies between citizens of the same State, and it is only by asserting that when there are defendants, citizens of the same State with the plaintiff in a suit, they must be regarded as merely incidental parties, that the clause can be held broad enough to reach the case at bar. It is plain, however, that the suit is just as much a controversy between citizens of the same State, as it is a controversy between citizens of different States. The interest of the defendants is joint and inseparable. The defendant, citizen of the State, is no more *incidental* to the controversy, than the defendants, citizens of another State. There seems to be no principle nor rule under which the suit can be described as a controversy between citizens of different States.

If the meaning of the clause in question were doubtful in itself, it is made clear by the clause which immediately succeeds it, and which specifies the cases in which the judicial power shall extend to controversies between citizens of

the *same* State, being the *eighth* class in the enumeration hereinbefore given. The rule of *expressio unius exclusio est alterius* applies.

Mr. Justice CLIFFORD delivered the opinion of the court.

Original cognizance of all suits of a civil nature, at common law or in equity, is given to the Circuit Courts by the eleventh section of the Judiciary Act, concurrent with the courts of the several States, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, . . . and an alien is a party, or the suit is between a citizen of the State where the suit is brought and a citizen of another State, subject, however, to the restriction that no civil suit shall be brought before any Circuit Court against any inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant or in which he shall be found at the time of serving the writ.*

Suits commenced in a State court against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State, may, under the twelfth section of the same act, be removed for trial by the defendant into the Circuit Court for the same district if the matter in dispute exceeds the sum or value of $500, provided the defendant file a petition requesting such removal at the time of entering his appearance in the State court, and offer good and sufficient surety that he will enter copies of the process against him in such Circuit Court on the first day of its next session, and for his appearance, and that he will give special bail in the case if such bail would be requisite in the State court.†

Jurisdiction in such a case is concurrent between the proper State court and the Circuit Court for the same district, and the provision is that such a suit, if commenced in the State court, may be removed by the defendant for trial into the Circuit Court, subject to the conditions before mentioned, the privilege being given to the defendant only, as

---

* 1 Stat. at Large, 78.     † Ib. 79.

the plaintiff, when he institutes his suit, may elect in which of the two concurrent jurisdictions he prefers to go to trial.

These expressions in the act of Congress, where an alien is a party or the suit is between a citizen of a State where the suit is brought and a citizen of another State, says Marshall, C. J., the court understands to mean that each distinct interest should be represented by persons all of whom are entitled to sue or may be sued in the Federal courts; or, in other words, that where the interest is joint each of the persons concerned in that interest must be competent to sue or be liable to be sued in the court to which the suit is removed.* All of the complainants in that case were citizens of Massachusetts, and so also were all of the respondents, except one, who, it was admitted, was a citizen of Vermont. Due service was made upon the resident respondents, and the record showed that the subpœna had also been served upon the other respondent in the State where he resided. Want of jurisdiction was set up by the respondents in the Circuit Court, and the judge presiding in the Circuit Court entered a decree dismissing the bill of complaint. Appeal was taken to the Supreme Court, and the Supreme Court unanimously affirmed the decree of the Circuit Court. Repeated decisions have since been made by this court and by many other courts, State and Federal, to the same effect. Prior to the case of *Railroad* v. *Letson*,† it had frequently been held by this court that a corporation aggregate, as such, was not properly included in the word citizen, as used in the Judiciary Act, and consequently that such a corporation, if regarded merely as an artificial being, could not sue in the Federal courts, yet the court decided, in several cases, that the court would look beyond the corporate character of such an artificial being to the individuals of whom it was composed, and if it appeared that they were citizens of a different State from the party sued, that the suit, whether an action at law or a suit in equity, could be maintained in the

---

* Strawbridge et al. v. Curtiss et al., 3 Cranch, 267; Conolly v. Taylor, 2 Peters, 564; Curtis's Commentaries, § 75.

† 2 Howard, 550.

proper Circuit Court.   Cases of that description are quite numerous, and yet in all of them it was held by this court that all of the corporators must be citizens of a different State from the party sued, else the jurisdiction could not be sustained.*   Corporations, it is true, are now regarded by this court as inhabitants of the State by which they are created and in which they transact their corporate business, and it is also held that a corporation is capable of being treated as a citizen for all purposes of suing and being sued in a Circuit Court, but the rule as modified, in that regard, does not diminish the authority of those cases as precedents to show that by the true construction of the Judiciary Act it requires that each of the plaintiffs, if the interest be joint, must be competent to sue each of the defendants in the Circuit Court to sustain the jurisdiction under the eleventh section of that act.†

Certain sums of money, it is alleged, in excess of what could properly be exacted by the defendant corporations, had been paid to those corporations by the plaintiffs, and the corporation defendants refusing to refund the amount of such alleged excess the corporation plaintiffs instituted an action at law, in the Supreme Judicial Court of the State, against the corporation defendants, to recover back the amount of the alleged overpayments.   Patent rights, it seems, are owned by the three corporation defendants, for the exclusive privilege to construct, use, and vend certain patented sewing machines, and the inference is that the corporation plaintiffs are or have been licensees of the corporation defendants. What the precise terms of the license are or were does not very satisfactorily appear, but it may be inferred that the plaintiffs covenanted to pay to the defendants a certain pat-

---

* Bank of the United States v. Deveaux, 5 Cranch, 61; Railroad Bank v. Slocomb, 14 Peters, 63; Irving v. Lowry, Ib. 299; Breithaupt v. Bank, 1 Id. 238; West v Aurora City, 6 Wallace, 142.

† Marshall v. Railroad, 16 Howard, 325; Railroad v. Wheeler, 1 Black, 295; Drawbridge Company v. Shepherd, 20 Howard, 227; Same Case, 21 Id. 112; Coal Company v. Blatchford, 11 Wallace, 172.

ent rent or tariff for the use of the patent right, subject to be reduced in amount in case the defendants granted licenses to other parties at a lower rate, and the charge is that the defendants did grant licenses to others at a lower rate without making to the plaintiffs the stipulated reduction; that the corporation defendants have ever since exacted the higher patent fee or tariff in violation of the terms of the license. Payments having been made the plaintiffs commenced this suit to recover back the amount. They joined as defendants the Grover & Baker Sewing Machine Company, which is a corporation established under the laws of Massachusetts; the Wheeler & Wilson Manufacturing Company, which is a corporation established under the laws of Connecticut; and the Singer Manufacturing Company, which is a corporation established under the laws of New York. Seasonable appearance was entered by the company first named at the return term, and they filed an answer within the time required by the rules of the court. Neither of the other corporation defendants entered a general appearance at the return term, but the plaintiffs caused an order of notice to issue to those corporations respectively to appear at the next term of the court, and subsequently filed proof that the order of notice was duly served by publication. By the return of the marshal it appears that personal property of those respective corporations was attached on the original process, and the plaintiffs claim that by virtue of the attachment and the due service of the order of notice the State court acquired jurisdiction of all the parties. Subsequently, however, both of the non-resident corporations appeared and, having obtained the leave of the court for the purpose, filed their answers to the action, and on the same day they filed their several petitions for the removal of the cause for trial to the Circuit Court for that district. Each of the petitions was accompanied by an affidavit executed by the president of the company, and by a bond of the company in usual form as required by law in such a case. Hearing was had and the State court refused to grant the prayer of the respective petitions, and directed that the parties

should proceed to trial, to which rulings the defendants then and there excepted, and the verdict and judgment were for the plaintiffs. Exceptions were also taken by the defendants to the rulings of the court in the progress of the trial and to certain instructions given by the court to the jury, but it will not be necessary to re-examine the exceptions taken during the trial, as the only question to be determined under this writ of error is whether the rulings of the court in overruling the respective petitions for the removal of the cause into the Circuit Court, and in directing that the parties should proceed to trial in the State court were or were not correct.

Circuit Courts do not derive their judicial power, immediately, from the Constitution, as appears with sufficient explicitness from the Constitution itself, as the first section of the third article provides that " the judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish." Consequently the jurisdiction of the Circuit Court in every case must depend upon some act of Congress, as it is clear that Congress, inasmuch as it possesses the power to ordain and establish all courts inferior to the Supreme Court, may also define their jurisdiction. Courts created by statute can have no jurisdiction in controversies between party and party but such as the statute confers.* Congress, it may be conceded, may confer such jurisdiction upon the Circuit Courts as it may see fit, within the scope of the judicial power of the Constitution, not vested in the Supreme Court, but as such tribunals are neither created by the Constitution nor is their jurisdiction defined by that instrument, it follows that inasmuch as they are created by an act of Congress it is necessary, in every attempt to define their power, to look to that source as the means of accomplishing that end.† Federal judicial power,

* Turner v. Bank, 4 Dallas, 10; Sheldon v. Sill, 8 Howard, 448; McIntire v. Wood, 7 Cranch, 506; Kendall v. United States, 12 Peters, 616.

† Cary v. Curtis, 3 Howard, 245.

beyond all doubt, has its *origin* in the Constitution, but the organization of the system and the distribution of the subjects of jurisdiction among such inferior courts as Congress may from time to time ordain and establish, within the scope of the judicial power, always have been, and of right must be the work of the Congress.

Attempt is made in argument to maintain the right, claimed by the defendants, to remove the cause for trial in this case from the State court where it was commenced into the Circuit Court, as being derived under the act of the 2d of March, 1867, which is entitled an act to amend a prior act entitled an act for the removal of causes, in certain cases, from State courts.

Reference will first be made to the prior act referred to in the title of the amendatory act, as the prior act followed the Judiciary Act in many respects and, like that act, limits the right of removal to the alien defendant and the defendant who is a citizen of a State other than that in which the suit is brought. Subsequent to those preliminary recitals it provides, in effect, that where the suit is commenced in the State court against an alien, or by a citizen of the State against a citizen of another State, the non-resident defendant or the alien defendant, as the case may be, may remove the cause from the State court into the Circuit Court, even though it appears that a citizen of the State where the suit is brought is also a defendant, if the suit, so far as it relates to the alien defendant or the non-resident defendant, was instituted and is prosecuted for the purpose of restraining or enjoining such defendant; or if the suit is one which, so far as it respects such alien or non-resident defendant, can be finally determined without the presence of the other defendant or defendants as parties in the cause, then and in every such case the alien or non-resident defendant may, at any time before the trial or final hearing of the cause, file a petition for the removal of the same, as against the petitioner, into the Circuit Court; but the provision in the same act also is, that such removal of the cause shall not be deemed to prejudice or take away the right of the plaintiff

to proceed, at the same time, with the suit in the State court, if he shall see fit, against the other defendants.*

Remarks to show that the act referred to contains nothing to support the view that Congress intended by it to depart from the essential principle embodied in the Judiciary Act are hardly necessary, as it is obvious that the language of the act does not empower any defendant, unless he be an alien or non-resident, to remove the cause or to elect any other forum for the trial of the same than the one to which the suit is returnable, nor does it give any sanction whatever to the proposition that the resident defendant shall be compelled or permitted under any circumstances to go elsewhere to answer the suit.   Defendants in certain cases may sever, after final judgment, for the purpose of prosecuting an appeal or writ of error, which is effected by a proceeding usually called summons and severance, which will enable one of several defendants, or any number less than the whole, to sue out a writ of error or take an appeal in a case where the other defendants or respondents refuse to join in the petition for the same.†   Modes of effecting a severance among executors, so that less than the whole number may sue, were also known at common law, but in such a case it was necessary that such a proceeding should be perfected before the suit was instituted.‡   By virtue of the provision under consideration the alien defendant or the defendant who is a citizen of a State other than that in which the suit is brought is empowered, subject to the conditions specified, without any summons and severance, to remove the cause, as between him and the plaintiff, into the Circuit Court for trial, leaving the cause, as between the plaintiff and the other defendants, to proceed in the State court where the suit was commenced, wholly unaffected by such removal, the only effect of the removal in such a case being to sever to that

---

* 14 Stat. at Large, 306.

† Williams v. Bank, 11 Wheaton, 414; Wilson's Heirs v. Insurance Co., 12 Peters, 140; Todd v. Daniel, 16 Id. 521.

‡ 2 Williams on Executors, 4th Am. ed. 1186, note t; Goodyear v. Rubber Co., 2 Clifford, 368.

'extent the defendants in the cause for the special purpose provided in the enactment, but the provision affords no support whatever to the theory set up by the defendants in the case before the court.* Before the passage of that act no removal could be made in such a case, as some of the defendants are by that act supposed to be citizens of the State where the suit is brought, and all the courts, Federal and State, had uniformly decided that unless the cause was removable as to all the defendants it could not be removed at all, as the act of Congress contained no provision warranting any such proceeding as summons and severance for any purpose.† Unlike the Judiciary Act, however, the alien defendant or the defendant who is a citizen of a State other than that in which the suit is brought may, under the "Act for the removal of causes in certain cases from State courts," have the cause removed, as to himself, subject to the condition that such severance or partial removal shall not prejudice or take away the right of the plaintiff to proceed, at the same time, with the suit in the State court as against the other defendants, showing that the right of removal is still confined to the alien and non-resident defendant, and that no removal of the cause as to any other defendant can be made under that enactment.

Grant all that, still it is insisted by the defendants that the rulings of the State court in refusing to grant the prayers of their petitions and in directing that the parties should proceed to trial was erroneous, as the petitions were filed under the later act of Congress, which, as they contend, very much enlarges the right to remove causes from the State courts into the Circuit Courts for trial.

Important changes undoubtedly are made by that act in the law upon that subject, as it clearly extends the privilege

---

* Smith v. Rines, 2 Sumner, 338; Ward v. Arredondo, 1 Paine, 410; Sayles v. Insurance Co., 2 Curtis, 212; Hazard v. Durant, 9 Rhode Island, 608; Beardsley v. Torrey, 4 Washington, 286.

† Moffat v. Soley, 2 Paine, 103; Bissell v. Horton, 3 Day, 281; Tuckerman v. Bigelow, 21 Law Reporter, 208; Herndon v. Ridgway, 17 Howard, 424; Railway Co. v. Whitton, 13 Wallace, 289.

to a non-resident plaintiff as well as to a non-resident defendant, subjecting both, however, to a new condition, wholly unknown in the prior acts of Congress, vesting such a right in an alien defendant or in a defendant who was a citizen of a State other than that in which the suit is brought. Where a suit is now pending or may hereafter be brought in any State court in which there is controversy between a citizen of the State in which the suit is brought and a citizen of another State, such citizen of another State, whether he be plaintiff or defendant, if he will make and file in such State court an affidavit stating that he has reason to believe and does believe that, from prejudice or other local influence, he will not be able to obtain justice in such State court, may, at any time before the final hearing or trial of the suit, file a petition in such State court for the removal of the suit into the next Circuit Court to be held in the district where the suit is pending. Aliens it will be seen are not included in the provision, but the right to petition for the removal is extended to the non-resident plaintiff as well as to the non-resident defendant, in a case where it appears that a resident defendant is sued by a non-resident plaintiff, as in such a case there is controversy between a citizen of the State in which the suit is brought and a citizen of another State, just as much as there is in a case where a resident plaintiff sues a non-resident defendant in his own district, the defendant being found within the same district and served there with the original process.

Under the Judiciary Act and the succeeding act for the removal of certain causes, the plaintiff, if he elected to commence his suit in a State court, whether he was resident or non-resident, was bound by his election, nor was it ever supposed that he could subsequently be permitted to remove the cause from the State court into the Circuit Court in ordinary circumstances, as neither of those acts of Congress vest in the plaintiff any such right, nor do they contain any language to warrant the conclusion that Congress ever intended to confer upon a plaintiff any such power. Non-resident defendants and alien defendants might cause such

removal to be made, but under the Judiciary Act the condition was that such a defendant must file his petition requesting such removal at the time he entered his appearance in such State court; which condition is relaxed in this act, so far as it respects non-resident defendants and non-resident plaintiffs, and it is provided that the right may be exercised "at any time before the final hearing or trial of the suit."

Viewed in the light of these suggestions it is clear that it is a mistake to suppose that the act will operate to limit the right conferred by the Judiciary Act unless the court give it the broad construction assumed by the defendants, as it extends the right to a non-resident plaintiff as well as to a non-resident defendant, and allows both to file the necessary petition at any time before the final hearing or trial of the suit, leaving the case of the alien defendant unaffected by any of its provisions.

Mere regulation, such as requiring the cause of removal to be stated, and that the petition should be supported by an affidavit, is not sufficient change in the principle of the Judiciary Act to support the proposition, as the great purpose of the new enactment is to extend the right to a non-resident plaintiff as well as to a non-resident defendant, and to enlarge the time within which the petition may be filed, leaving the alien defendant wholly unaffected by the new regulations.

Apply these rules of construction to the three acts of Congress referred to in this case, and it is clear that they will work out the following results: (1) In a case where the suit is commenced by a plaintiff in the court of a State of which he is a citizen, against a defendant who is a citizen of another State, the defendant may remove the cause into the Circuit Court of that district for trial. (2) Where the plaintiff brings his suit in the court of a State other than that of which he is a citizen, against a defendant who is a citizen of the State where the suit is brought, the plaintiff may remove the cause into the Circuit Court under the last-named act.*

---

* Beery v. Irick, 22 Grattan, 485.

Suppose, however, the plaintiff brings his suit in the court of a State other than that of which either he or the defendant is a citizen, the defendant having been found therein and been duly served with the original process, then neither the plaintiff nor the defendant can remove the cause from the State court into the Circuit Court for trial under any existing act of Congress, as in that case there is not controversy between a citizen of a State in which the suit is brought and a citizen of another State, nor is the suit one commenced by a citizen of a State in which the suit is brought against a citizen of another State, as the condition is as provided in the Judiciary Act. Both plaintiff and defendant being non-residents, the acts of Congress make no provision for the removal of such a cause into the Circuit Court for trial.

Unaffected as the Judiciary Act is by the latest of the three acts mentioned, the law still is that if the suit is commenced against an alien in a State court, he may file a petition for the removal of the same for trial into the next Circuit Court to be held in the district, at the time of entering his appearance in such State court. Non-resident defendants or alien defendants may also remove certain causes from a State court into a Circuit Court for trial, under the intermediate act of Congress, as before explained. Where the suit is commenced in a State court against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State, the non-resident defendant or the alien defendant, as the case may be, may remove the cause from the State court into the Circuit Court for trial, even though it appears that a citizen of the State where the suit is brought is also a defendant, if the suit, so far as it relates to the non-resident or alien defendant, was instituted and is prosecuted for the purpose of restraining or enjoining such defendant, or if the suit is one which, so far as it respects such defendant, can be finally determined without the presence of the other defendants as parties in the cause. Considering the stringent conditions which are embodied in the last-named act, it is doubtful whether it will prove to be one

of much practical value, but as it remains in full force it cannot be properly overlooked in this investigation. Suggestion is made that it is a step in advance of the Judiciary Act, but the force of the suggestion is not perceived, as it makes no provision that any party shall go into the Circuit Court for trial except such as may go or be sent there under the twelfth section of the Judiciary Act. Divest that act of the feature which provides for the severance of the defendants and that which empowers the plaintiff to proceed with the suit in the State court as against the other defendants, and it is exactly the same as the corresponding feature. of the Judiciary Act, except that it extends the time for filing the petition for the removal of the cause from the time the petitioner enters his appearance in the State court to the time of the trial or final hearing of the cause. Separately considered the language employed in the " act for the removal of causes in certain cases from the State courts " to describe the parties and the suit in which the alien defendant or the non-resident defendant may remove the cause into the Circuit Court for trial, is identical with the language employed in the Judiciary Act, the two provisions differing only in the particulars heretofore sufficiently explained, showing that the well-established rule applies in construing the later act, that words and phrases, the meaning of which in a statute have been ascertained by judicial interpretation, are, when used in a subsequent statute, to be understood in the same sense.* Such a construction in the case supposed becomes a part of the law, as it is presumed that the legislature in passing the later law knew what the judicial construction was which had been given to the words of the prior enactment. Support, therefore, to the theory put forth by the defendants cannot be derived either

---

* Potter's Dwarris, 274; Bacon's Abridgment, title "Statute," I; Pennock v. Dialogue, 2 Peters, 18; Cathcart v. Robinson, 5 Id. 280; McCool v. Smith, 1 Black, 469; Commonwealth v. Hartnett, 3 Gray, 450; Ruckmaboye v. Mottichund, 32 English Law and Equity, 84; Bogardus v. Trinity Church, 4 Sandford's Chancery, 633; Rigg v. Wilton, 13 Illinois, 15; Adams v. Field, 21 Vermont, 256.

from the Judiciary Act or from the later act entitled An act for the removal of causes in certain cases from State courts.*

Admit that and still it is insisted by the defendants that they had the right to remove the cause from the State court under the act to amend the act called the Removal Act.† Much stress is placed upon the particular language of that act, which is that " when a suit is now pending or may hereafter be brought in any State court, *in which there is controversy between a citizen of the State in which the suit is brought and a citizen of another State."* Instead of that the corresponding language of the Judiciary Act is, if a suit be commenced in any State court by a citizen of the State in which the suit is brought against a citizen of another State.

Different words are certainly employed in the two provisions, but it is difficult to see in what particular the jurisdiction of the State court is lessened by the last act or in what respect the difference of phraseology supports the theory of the defendants, as " a suit by a plaintiff against a defendant " must mean substantially the same thing in the practical sense as " a suit in which there is controversy between the parties," as each provision includes the word suit, which applies to any proceeding in a court of justice in which the plaintiff pursues his remedy to recover a right or claim.‡  Indubitably they differ in this, that it is the defendant only who can remove the cause under the Judiciary Act, but the last-named act empowers the non-resident plaintiff, in a proper case, as well as the non-resident defendant, to exercise the same privilege, as in the former case, as well as in the latter, there is a suit pending in which there is controversy between a citizen of the State in which the suit is brought and a citizen of another State, and the express enactment is that in the case supposed " such citizen of another State, whether he be plaintiff or defendant," if he will comply with the conditions stated, may, at any time

---

* 14 Stat. at Large, 306.                     † Ib. 559.

‡ 2 Bouvier's Law Dictionary, 558; Weston v. Charleston, 2 Peters, 449 ; 1 Curtis's Commentaries § 73, p. 85 ; Webster's Dictionary, " Suit."

before the final hearing or trial of the suit, file a petition for the removal of the cause.* Real parties only are empowered to claim that right under either act, and it is equally clear that the right of the defendant cannot be defeated by joining with him a mere nominal party in the action.†

Special attention is also invited to the fact that the judicial power conferred by the Constitution extends to controversies between citizens of different States, and the proposition is submitted in argument that it would be competent for Congress to pass a law empowering one of a number of plaintiffs, or one of a number of defendants, to remove such a suit for trial from a State court into the Circuit Court for the same district, if it appeared that the petitioner, whether plaintiff or defendant, was a citizen of a State other than that in which the suit was brought, even though all the other plaintiffs or other defendants were citizens of the State in whose court the suit was pending, but the court is of the opinion that the question does not arise in this case, as the act of Congress in question, in the judgment of the court, does not purport to confer any such right. Were it true that the Circuit Courts derive their judicial power immediately from the provisions of the Constitution, it might be necessary to examine that proposition, but inasmuch as it is settled law that the jurisdiction of such courts depends upon the acts of Congress passed for the purpose of defining their powers and prescribing their duties, it is clear that no such question can arise in a case like the present, unless it first be ascertained that Congress has passed an act purporting to confer the disputed power. Courts are disinclined to adopt a construction of an act of Congress which would extend its operation beyond what is warranted by the Constitution, but the suggestion that

---

* Cooke v. Bank, 1 Lansing, 502; Bryant v. Rich, 106 Massachusetts, 191; Cooke v. Bank, 52 New York, 96.

† Dodge v. Perkins, 4 Mason, 435; Rateau v. Bernard, 3 Blatchford, 245; Ward v. Arredondo, 1 Paine, 410; Wormley v. Wormley, 8 Wheaton, 451; 1 Curtis's Commentaries, § 74.

Congress possesses the power to confer a new privilege is not a sufficient reason to induce the court to extend an existing enactment by construction so as to embrace the privilege, unless the words of the enactment are of a character to warrant the construction.

Either the non-resident plaintiff or non-resident defendant may remove the cause under the last-named act, provided all the plaintiffs or all the defendants join in the petition, and all the party petitioning are non-residents, as required under the Judiciary Act, but it is a great mistake to suppose that any such right is conferred by that act where one or more of the plaintiffs or one or more of the petitioning defendants are citizens of the State in which the suit is pending, as the act is destitute of any language which can be properly construed to confer any such right unless all the plaintiffs or all the defendants are non-residents and join in the petition.*

Two cases only, besides the opinion given in this same case in the Circuit Court, to wit, *Johnson* v. *Monell*,† *Sands* v. *Smith*,‡ are cited to support the assumed theory, neither of which necessarily involved any such question, and the reasons given for the conclusion by the learned circuit judge, on the motion to dismiss the case in the Circuit Court, are not satisfactory.

JUDGMENT AFFIRMED.

Justices MILLER and BRADLEY dissented from the preceding opinion of the court in reference to the construction of the act under consideration, and for this reason dissented from the judgment.

---

* Bryant *v.* Scott, 6 North Carolina, 392; Hazard *v.* Durant, 9 Rhode Island, 609; Waggener *v.* Cheek, 2 Dillon, 565; Case *v.* Douglas, 1 Id. 299; Bixby *v.* Couse, 8 Blatchford, 73; Ex parte Andrews, 40 Alabama, 648; Peters *v.* Peters, 41 Georgia, 251; Cooke *v.* State Bank, 52 New York, 113.

† 1 Woolworth, 390.

‡ 1 Dillon, 290.