THOURON *et al. v.* EAST TENNESSEE, V. & G. RY. Co. *et al.*

(*Circuit Court, E. D. Tennessee.*   April 27, 1889.)

REMOVAL OF CAUSES—LOCAL PREJUDICE—CITIZENSHIP OF PARTIES.

The complainants, some of whom were citizens of Pennsylvania, and the remainder aliens, on behalf of themselves and all other stockholders of the E. T., V. & G. Ry. Co., filed their bill in equity in a state court against the E. T., V. & G. Ry. Co., a corporation of Tennessee, the R. & D. R. Co., and the R. & W. P. T. R. & W Co., both corporations of Virginia, and the various directors of the three corporations, citizens of New York, Virginia, and Tennessee, to enjoin and restrain the E. T., V. & G. Ry. Co. from ratifying and approving a pretended lease of their property to the R. &. D. R. Co., and to compel the latter company to restore to the possession of the former the property which had already been turned over by virtue of such lease.   A motion for an injunction was made in the state court, which, after argument, was granted.   Thereupon, and after the service of the injunction, one A. G. S., a citizen of the state of Tennessee, without the knowledge or consent of the solicitors for the complainants, obtained an *ex parte* order making him a co-complainant in the suit.   The R. & D. R. Co., having filed its answer, removed the suit to the United States circuit court on the ground that it was a suit pending in a state court, in which there was a controversy between a citizen of the state of Tennessee, *i. e.,* A. G. S., and the petitioner, a citizen of the state of Virginia; that the amount of $2,000, exclusive of costs, was involved in said suit; and that by reason of local influence or prejudice the petitioner could not obtain justice in either the court in which the suit was brought or in any other state court to which, under the laws of Tennessee, it could be removed.   The original complainants moved in the United States circuit court for an order remanding the cause.   *Held,* (1) that the cause was improperly removed to this court, and that it cannot take jurisdiction of the same; (2) that the removal of a cause from a state court on account of prejudice or local influence, under the act of 1867, as re-enacted in subdivision 3, § 639, Rev. St., could only be had, as settled by numerous decisions of the supreme court, when all the parties to the suit on one side are citizens of different states from those on the other; (3) that the language of the act of 1867, on which such decisions were based, having been copied into the act of 1887, the same construction must be given to the latter act; (4) that, while the original complainants were the only party plaintiffs, there was clearly no right of removal on the part of the defendants or either of them; (5) that the joinder of A. G. S. as co-complainant, in a representative suit so brought, in no way changed the character, object, or purpose of the suit, and did not confer upon the defendant the R. & D. R. Co. the right to remove the suit to the federal court.   *Whelan* v. *Railroad Co.,* 35 Fed. Rep. 849, distinguished.

In Equity.   On motion to remand.

*Ingersoll & Peyton, Charles M. Da Costa,* and *Samuel Dickson,* for the motion.

*Pope Barrow,* opposed.

JACKSON, J.   In October, 1888, the complainants, Nicholas Thouron, William J. Barr, and Edmund Allen, being then and now citizens of the state of Pennsylvania, in connection with C. Sligo de Pothonier and Frederick J. Burt, then and now aliens and subjects of Great Britain, on behalf of themselves and all other stockholders of the East Tennessee, Virginia & Georgia Railway Company similarly situated who might choose to come in and share in the benefit and expense of the litigation, filed their bill in the chancery court of Knox county, Tenn., at Knox-

ville, against the East Tennessee, Virginia & Georgia Railway Company, a corporation of Tennessee, the Richmond & Danville Railroad Company, and the Richmond & West Point Terminal Railway & Warehouse Company, both corporations of the state of Virginia, and against the directors of the three said corporations, said directors being then and now citizens of the state of New York, Virginia, and Tennessee, for the purpose of enjoining and restraining the East Tennessee, Virginia & Georgia Railway Company from ratifying and approving a certain contemplated lease of its road and property to the Richmond & Danville Railroad Company, as the directory of said companies had agreed upon, on or about the 17th October, 1888, on the ground that said lease was *ultra vires*, was in violation of law, and was an abuse of the powers of said directors, etc., and seeking to compel the Richmond & Danville Railroad Company to restore to the possession of the East Tennessee, Virginia & Georgia Railway Company the road and property which the latter had already turned over to the former under and in pursuance of said lease agreement made by the directory alone of the two companies; and also seeking to prevent the West Point Terminal Company from voting the shares of stock of the East Tennessee, Virginia & Georgia Railway Company held and owned by it in favor of said lease at the meeting of the stockholders of the latter company, called to meet in December, 1888, for the purpose of ratifying and confirming said lease. The grounds on which the complainants, as stockholders in the East Tennessee, Virginia & Georgia Railway Company, predicated their right to the relief sought, need not be especially noticed. The defendant corporations were brought regularly before the court either by service of process or by voluntary appearance, and thereafter, on motion of the complainants, the chancellor granted the preliminary injunction prayed for, and further ordered and directed the Richmond & Danville Railroad Company to restore to the East Tennessee, Virginia & Georgia Railway Company the possession and control of the latter's road and property which had been turned over to it as lessee, so as to place the companies *in statu quo* pending the litigation. This was done in compliance with the order of the chancellor, and the cause then proceeded in the state chancery court, (the several steps taken not being material to the present question,) until December 1, 1888, when one A. G. Sharp, a citizen of Tennessee, and the alleged holder and owner of 50 shares of the common stock of the East Tennessee, Virginia & Georgia Railway Company, presented his petition to said chancery court, asking to be made a party co-complainant in said suit, and offering to bear his proportion of the expenses thereof, to the end that he might share the benefit sought or secured thereby. By an order of the court entered on the same day and date, said Sharp was made a party co-complainant in the cause. Thereafter the Richmond & Danville Railroad Company filed its answer to the bill, said answer, by agreement of parties, and by order of the court, being filed as of the date December 29, 1888. The other defendant corporations had previously filed their answers. The cause being then at issue as between the complainants, including said Sharp and the defendant corporations the Rich-

mond & Danville Railroad Company on the 25th January, 1889, before any final hearing or trial had been had in the state court, presented its petition, supported by the affidavit of its proper officer, to the circuit court of the United States for the district of East Tennessee, asking to have said suit removed to said circuit court on account of prejudice and local influence which would prevent petitioners from obtaining justice in said chancery court of Knox county, or in any other state court of Tennessee to which petitioners might, under the laws of said state, have the right, because of such prejudice or local influence, to remove said cause. The petition set out that the petitioner was a corporation organized under and by virtue of the laws of the state of Virginia, and was a citizen of said state; that said A. G. Sharp was, at the commencement of said suit in the state chancery court, and still is, a citizen of the state of Tennessee; that in said chancery suit there was a controversy between the petitioner and said Sharp; that the amount involved in said controversy exceeded the sum of $2,000, exclusive of interest; that because of prejudice and local influence petitioner could not obtain justice in said state court, etc.; and praying that said cause might be removed into the said circuit court of said district. The existence of the prejudice and local influence were positively averred in the petition and as positively sworn to, in the very language of the act of 1887. Upon the presentation of said petition thus verified the circuit court allowed the same to be filed, and required petitioner to enter into bond for costs as provided by law, and, upon its so doing, passed and entered the following order, under date of January 28, 1889:

"It appearing to the court from the petition filed in this cause and the affidavit thereto attached, that from prejudice or local influence petitioner, the Richmond and Danville Railroad Company, will not be able to obtain justice in the chancery court of Knox county, Tenn., or in any other state court to which petitioner as defendant may or could under the laws of the state of Tennessee have the right, on account of such prejudice or local influence, to remove this cause, and that it is therefore entitled to have the removal which it seeks, it is accordingly ordered that this cause be, and the same is hereby, removed from the said chancery court of Knox county to this court, and that notice of this order be served upon said chancery court of Knox county, Tenn., and that said court and the clerk thereof be and is requested to furnish upon application of petitioner and the payment of the lawful fees therefor, a copy of the record on file in said court in this cause, to be filed in this court."

This order was courteously recognized and acceded to by the presiding judge of the state court; a transcript of the record was promptly furnished petitioner, and by it filed in this court. Thereupon the complainants other than said A. G. Sharp filed their petition and motion to remand said cause to the state court, assigning in support of their motion various grounds, which it is not deemed necessary to notice and consider separately and in detail. They involve and present the general question whether the cause, as disclosed by the record now produced, and the situation of the parties to the suit, was either removable or properly removed to this court. On behalf of the Richmond & Danville Railroad Company it is claimed that the removal is warranted by

the last clause of the second section of the act of March 3, 1887, which provides as follows:

"And where a suit is now pending, or may be hereafter brought, in any state court in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant being such citizen of another state may remove such suit into the circuit court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to said circuit court that from prejudice or local influence he will not be able to obtain justice in such state court, or in any other state court to which said defendant may, under the laws of the state, have the right, on account of such prejudice or local influence, to remove said cause."

The provisions of the act of 1887 were construed and applied by this court in the case of *Whelan* v. *Railroad Co*., 35 Fed. Rep. 863, which is cited and relied on as fully sustaining the present removal. The decisions on the circuit are not in harmony touching the mode of procedure to effect a removal under said act because of prejudice or local influence, or the necessity of giving notice of the application, or to the right of the side opposing the removal to traverse and in some form to try the question whether such prejudice or local influence actually exists. The cases, however, generally concur in the proposition that any defendant, being a non-resident of the state in which the suit is brought, who can make it appear to the circuit court that he cannot obtain justice in the state court, etc., because of prejudice or local influence, is entitled to have the suit removed, provided the requisite citizenship exists on the part of the plaintiff or complainant in the cause. After a reexamination of the opinion in *Whelan* v. *Railroad Co.*, as requested by counsel for complainant, we are not inclined to overrule or modify the ruling therein until the question presented has been definitely settled by the supreme court of the United States. But is the Whelan decision conclusive of the present case? In some respects the cases are similar, but in others they are materially different and clearly distinguishable. In the *Whelan Case* a citizen of Ohio was the sole plaintiff in a suit brought in the state court of Ohio against three corporations. Two of said corporations were citizens of Ohio, while the third defendant corporation, which sought and obtained the removal to the circuit court of the United States, was a citizen of the state of Pennsylvania. The application was based on prejudice or local influence under the above-quoted clause of section 2 of the act of 1887. The situation of the parties, plaintiff and defendants, in respect to the diverse citizenship required by the act was substantially the same as existed in the *Sewing-Machine Cos. Case*, 18 Wall. 553, and the authority of that case would have been conclusive against the right of the defendant the New York, Lake Erie & Western Railroad Company to remove the suit, but for the change which the act of 1887 made in the law as it previously stood, in providing that "any defendant" being a citizen of a state other than that in which the suit was brought might have the causes removed to the circuit court upon making it appear to said court that because of prejudice or local influence he could not obtain justice in the state court. The

opinion of the court in the *Whelan Case* should, perhaps, be read in the light of, and confined to, the situation and *status* of the parties then before the court. That opinion was certainly not intended to lay down the broad proposition that "any defendant" who could make the necessary showing as to prejudice or local influence would be entitled to remove the suit from the state court to this court, if any or a single party on the plaintiff side of the case happened to be a citizen of the state in which such suit was brought and pending. In the *Whelan Case* the requisite citizenship on the plaintiff side of the suit existed both under the act of 1867, (subdivision 3, § 639, Rev. St.,) and under the last clause of the second section of the act of 1887. The court therefore had no occasion to go into or to consider the question here presented, as to how far or to what extent the right of "any defendant" to have a removal is affected by the presence of joint plaintiffs or complainants, some, but not all, of whom are citizens of the state in which the suit is brought. It may be true, as urged by counsel for defendant in opposition to the motion to remand, that the presence of a single resident plaintiff or complainant, though joined with other non-citizens of the state in which the suit is brought, injects into the case the poison of prejudice or local influence against which the non-resident was intended to be guarded or protected as effectually as though such resident was the sole party plaintiff; but, as the right of removal depends upon the legislation of congress giving the authority therefor, the point to be determined is not whether cases thus situated come within the mischief to be guarded against, nor whether the judicial power of the United States is sufficient to reach such cases. This may all be conceded, and the question still remains whether under or by existing legislation on the subject of removals on account of prejudice or local influence any provision has been made which embraces or applies to suits in which there are several joint plaintiffs or co-complainants, only a portion of whom are citizens of the state in which the action is brought. In considering this question the court must observe and apply the well-settled rule for the construction of statutes that clauses of the later or present act should be given the established meaning of the earlier act from which they are copied. In so far, therefore, as the act of March 3, 1887, copies old clauses or provisions of the act of 1867, (subdivision 3, § 639, Rev. St.,) it must be regarded as a legislative re-enactment of the meaning which the supreme court had previously given to these clauses. The last clause of the second section of the act of March 3, 1887, (above quoted,) which, as we think, operated as a repeal of subdivision 3, § 639, Rev. St., embodying the act of March 2, 1867, introduces well-defined changes in the old law, such as taking from the non-resident plaintiff the right to remove, the character of the affidavit required, the court to which the application for removal is to be made, confining the right of removal upon "any defendant" being a citizen of another state who can make the requisite showing as to prejudice or local influence, and allowing the removal to take place, perhaps, without reference to the amount involved in the suit. But, in respect to the character of the suit and the parties thereto, the language of the two

acts is the same. The act of 1867 provided "that where a suit is now pending or may hereafter be brought in any state court in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state," etc., the citizen of such other state, whether plaintiff or defendant, making the required affidavit, and within the time prescribed, was allowed to remove the suit. Now, the first portion of the last clause of section 2 of the act of 1887 employs the same descriptive terms as to the suit and parties, as follows: "And where a suit is now pending or may be hereafter brought in any state court in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state," any defendant being a citizen or another state may effect the removal in the mode and manner described. The suit described in both acts as to the parties is "between a citizen of the state in which it is brought and a citizen of another state."

In construing the act of 1867 the supreme court of the United States has uniformly held that if on each side of such suit there be more than one person, then all the persons on one side must be citizens of the state in which the suit is brought, and all the parties on the other side citizens of some other state, and the latter, having the right of removal, were required to unite in the petition therefor. See *Sewing-Machine Cos. Case,* 18 Wall. 553; *Vannevar* v. *Bryant,* 21 Wall. 41; *Society* v. *Grove,* 101 U. S. 610, 611; *Myers* v. *Swann,* 107 U. S. 546, 2 Sup. Ct. Rep. 685; *Society* v. *Price,* 110 U. S. 61, 3 Sup. Ct. Rep. 440; *Jefferson* v. *Driver,* 117 U. S. 272, 6 Sup. Ct. Rep. 729; *Iron Co.* v. *Ashburn,* 118 U. S. 54, 6 Sup. Ct. Rep. 929; *Hancock* v. *Holbrook,* 119 U. S. 586, 7 Sup. Ct. Rep. 341. Under the rules laid down in these cases, that the removal of a cause from a state court on the ground of prejudice or local influence could, under the act of 1867, be had only when all the parties to the suit on one side are citizens of different states from those on the other, it is perfectly clear that the citizenship of the co-complainant in the present case would, under the former law, have defeated the right of removal, even if the Richmond & Danville Railroad Company had been the sole defendant. Under the act of 1887, adopting the same language found in the act of 1867, so far as the citizenship of parties on the plaintiff side of the suit is concerned, it is difficult to escape the conclusion that the same rule would apply, and that where the citizenship on the plaintiff side of the suit is such as would prevent the removal under the act of 1867, it would be equally effective to defeat the right under the act of 1887. In the present case the original complainants who commenced the suit in the state court were citizens of Pennsylvania, and aliens. While they were the only complainants there was clearly no right of removal on the part of defendants, or either of them. The controversy involved did not relate to or concern either the validity or amount of complainant's several holdings of stock in the East Tennessee, Virginia & Georgia Railway Company, but, on behalf of themselves and all other stockholders similarly situated who might choose to join with them in sharing the expenses and benefits of the litigation, they began suit to set aside a lease

agreed upon between the directors of two of the defendant corporations, and to prevent the lessor, a Tennessee corporation, by vote of its stock-holders, from ratifying and adopting said lease. Such being the object and purpose of the suit, the lessor and lessee were both necessary and indispensable parties. There was no separable controversy between them and each of the several complainants; nor was the present removal sought or obtained on the ground of any separable controversy between the Richmond & Danville Railroad Company and all or either of the complainants. The suit, as originally instituted, was representative in its character, and entitled all parties similarly situated to intervene therein, and share its benefits upon such terms as to costs as the court might see proper to impose. But persons so intervening and becoming co-complainants in no way change the character, object, or purpose of the suit. They merely, and at most, make themselves joint actors from that time forward with the complainants who originally commenced the proceedings. It is doubtful whether, in representative suits of this character, such subsequent intervenors have any right or authority, before decree establishing their rights, to control the proceedings in any way. In Daniell's Chancery Practice, (4th Eng. Ed.,) 232, it is said that "in suits of this nature the plaintiff, as he acts on his own motion, and at his own expense, retains (as in other cases) the absolute dominion of the suit until decree, and may dismiss the suit at his pleasure." In *Tremain* v. *Insurance Co.*, 11 Hun, 286, the supreme court of New York seems to have applied this rule even after other parties similarly situated had been admitted into the cause as co-plaintiffs. But we think the true principle is that the original parties in such representative suits retain absolute dominion and control until decree, or until others taking the benefit of the proceedings are made actual parties to the cause; that upon and after the coming in of new parties, they properly have a joint voice and management with the original plaintiffs in the further progress of the cause. The coming in of new or additional parties into representative suits is ancillary to the jurisdiction acquired between the original parties, and, as said by the supreme court in *Stewart* v. *Dunham*, 115 U. S. 64, 5 Sup. Ct. Rep. 1163:·

"It would be merely matter of form whether the new parties should come in as co-complainants, or before a master, under a decree ordering a reference to prove the claims of all persons entitled to the benefit of the decree. If the latter course had been adopted, no question of jurisdiction could have arisen. The adoption of the alternative is, in substance, the same thing."

That was a creditors' bill commenced in the state court, then removed to the circuit court, where certain other creditors, who could not have gone into the federal court because of their citizenship, were admitted as co-complainants. The removal authorized on account of prejudice or local influence has never been considered or held as extending or applicable to cases like the present, where the right and authority of the state court to proceed did not at all depend upon whether the intervening citizen of the state was or was not a party to the cause. Although he may have been a dissenting or minority stockholder, opposed to the lease

sought to be annulled, Sharp, neither before nor after becoming a party complainant in the suit, was a necessary party thereto, nor could he, after having made himself a co-complainant therein, have dismissed or discontinued the suit against the wishes of the other complainants who instituted the same. If, as we think, under the local prejudice clause of the act of 1887 there can be no removal unless all the necessary parties on the side of the plaintiff are citizens of the state in which the suit is brought, it follows that the act of Sharp in becoming a co-complainant in this case did not confer upon the defendant the Richmond & Danville Railroad Company the right to remove the suit to this court.

Other grounds of objection to the removal are presented and urged on behalf of complainants, but in the opinion of the court they are not well taken, and need not be specially noticed and considered. No action is taken on the plea to the jurisdiction on the ground of Sharp's collusive joinder in order to effect the removal. The conclusion of the court is that this suit was improperly removed to this court, which cannot take jurisdiction of the same, and that the motion to remand it is well taken, and should be sustained. It is accordingly ordered and adjudged that this suit be and the same is hereby remanded to the chancery court of Knox county, Tenn., at the cost of the Richmond & Danville Railroad Company.

The foregoing opinion and conclusion also disposes of the removal made and had at the instance of the Richmond & West Point Terminal Railway & Warehouse Company, and a similar decree to the above is directed in that case.