The motion was that the court sign the following order:
"It appearing that defendant, the Richmond and Danville Railroad Company, has obtained an order for the removal of this cause into the Circuit Court of the United States for the Western District of North Carolina, all of which appears from the petition, affidavits and bond of said defendant and the order of said court duly certified to this court, it is considered and adjudged that this court will proceed no further in this cause, and that the clerk of this court certify to said Circuit Court, before the next term thereof, a copy of the record in this cause."
This motion was founded upon the petition, affidavits, and bond of said defendant, and the order of the Circuit Court of the United States for the Western District of North Carolina.
(392) The plaintiff was at the commencement of this action, and now is, a citizen and resident of the State of Kentucky.
The court declined to sign the order, and made the following entry on the docket, to wit:
"The court declined to permit the removal of this cause to the Circuit Court of the United States, and declines to sign the order presented by the defendant."
And from this judgment the defendant, the Richmond and Danville Railroad Company, appealed.
The affidavit for removal of cause upon which the motion was founded was as follows:
"A. B. Andrews, Vice-President of the Richmond and Danville Railroad Company, being duly sworn, does say that the Richmond and Danville Railroad Company is one of the defendants in the above entitled *Page 303 
cause which is now pending for trial in the Superior Court of Iredell County, in the State of North Carolina, and that from prejudice and local influence the said defendant shall not be able to obtain justice in the said State court, nor in any other State court to which the said defendant may, under the laws of the said State of North Carolina, have the right, on account of such prejudice or local influence, to remove said cause; that by the accident which occurred on the railroad of this defendant on 26 August, 1891, and which is the basis of this action, a number of persons, passengers, and employees on the train of the said defendant, were either killed or wounded, as many as twenty-two being killed, or having died from injuries received, and about twenty-seven injured, and that the said accident was at a place called Bostian Bridge, in the county of Iredell, in said State, on the date above mentioned; that the report of said accident was at once widely circulated, and many persons from the county of Iredell came to witness the scene of the accident, and also many persons from the adjoining counties to Iredell; that the dead and wounded were carried to Statesville, the county-site of Iredell County, where the dead (393) bodies were viewed by numerous citizens from the locality, and where many of the wounded were taken into the houses of citizens of said town; that great indignation was expressed by numbers of persons in the community on account of the great loss of life and injuries resulting from the accident, and many harsh and unjust criticisms were made upon the said defendant and the alleged careless manner in which it had operated its said railroad; many leading citizens going so far as to charge publicly that the destruction of life and injuries to the persons were the result of the recklessness of the said defendant and its wanton disregard of human safety and human life; that a newspaper published in Statesville called theLandmark, generally circulated in the county of Iredell and circulating also widely in the counties and localities adjoining and around Iredell County, which said newspaper has great influence in its circulation, published articles adverse to the said defendant on account of said accident, bitterly arraying the defendant before the readers of said paper and the public on account of the said accident, whereby, and on account of which, much prejudice was aroused against the said defendant and which still exists; that many of the persons killed or injured in the said accident were residents of the said county of Iredell and the adjoining counties, where their families, relatives, friends, and associates reside, all of whom are or have been active and zealous in denouncing and criticising the said defendant, and exciting against the defendant much ill and prejudicial feeling; that other newspapers than the Landmark above named, published and circulated in North Carolina and in the county aforesaid, and the adjoining counties, *Page 304 
have published and circulated articles bitterly denouncing the said defendant on account of the said accident, using such expressions (394) as rotten sills, loose rails, negligent employees and other like expressions to convey to the public the impression that the said accident was due to the gross and inexcusable negligence of the said defendant; that by reason of these things a strong public sentiment, prejudicial to the defendant, has been manufactured and matured, so much so that this affiant verily believes that the said defendant cannot obtain justice in the State courts aforesaid; that a number of suits have been brought in the State courts of North Carolina upon the alleged cause of action aforesaid, there being as many as twelve or fifteen in the county of Iredell, as many as ten in the county of Buncombe and several in other counties, and affiant is informed and believes that the parties plaintiff have made common cause in all the cases, and that they and their friends have been active in prejudicing the public mind against the said defendant with a view of placing it at a disadvantage in trials of said causes in the State courts."
A certified copy of the record of the Circuit Court, showing the petition and order of said court, was filed in the Superior Court. One of of the allegations in the petition for removal was as follows: "Your petitioner further shows that in said suit there is a controversy between a citizen of Kentucky and a citizen or Virginia, as it is informed and believes, the plaintiff's pleadings in the action, however, not showing of what State the plaintiff is a resident or citizen. The plaintiff and the petitioner are citizens of different States, and the controversy between your petitioner, which avers that it was, at the time of bringing said suit and still is, a citizen of Virginia, and that this action is brought in the State of North Carolina."
The right of removal depends upon the construction of the act of 1887 as amended in 1888, the pertinent portion of which is as follows: "And where a suit is now pending or may be hereafter brought in any State court in which there is a controversy between a citizen of the State in which the suit is brought and a citizen of another State, any defendant, being such citizen of another State, may remove such suit into the Circuit Court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to said Circuit Court that from prejudice or local influence he will not be able to obtain justice in such State court, or any other State court to which the said defendant may, under the laws *Page 305 
of the State, have a right on account of such prejudice or local influence to remove said cause." Foster Fed. Pr., 386; Malone v. R. R., 33 Fed., 631. The privilege of removal on account of prejudice or local influence is granted to defendants who are citizens of a State other than that in which the suit is brought, and the Richmond and Danville Railroad Company is entitled to the benefits of its citizenship in Virginia. But the action here is brought in the Superior Court of North Carolina by a citizen of Kentucky against a resident corporation and a foreign corporation, and is not, therefore, a controversy "between a citizen of the State in which suit is brought" and the citizen of a State, who as defendant, seeks to remove the cause. A citizen of a State other than this has sued a resident corporation in our State court, which, under our statutes, has cognizance of such a suit against it, and joins a nonresident corporation having property and conducting business within the State. The facts bring this case neither within the letter nor the spirit of the act of 1888. It does not come within the language of the law, because the plaintiff is a citizen of Kentucky and not of the district in which the action was brought. On the other hand, the mischief (396) evidently intended to be remedied in the enactment of the statute was the procurement of verdicts in State courts by bringing local influence to bear and engendering prejudice against nonresidents who have no community of interest with the jurors of the vicinage and in favor of persons who reside amongst and are identified with them. It will not be contended for the plaintiff, we suppose, that the fact of the existence of local prejudice or the exertion of such influence is a jurisdictional question, since it seems to be settled that it is within the sound discretion of the Federal court, to which removal is asked, to determine whether sufficient evidence has been offered to establish the truth of the allegation as to local influence and prejudice. In re Pennsylvania Co.,137 U.S. 451.
It is conceded, too, that under the act of 1888 the practice as to removal for local prejudice differs from that where the application is founded upon diverse citizenship, in that the motion in the one case must originate in the Federal, and in the other in the State courts. Foster,supra, sec. 386; 20 A. E., 1000, note 2; Fisk v. Henarie, 142 U.S. 468.
The affidavit filed in this case seems to be sufficiently full to meet the requirements of the more rigid, but apparently more just, rule adopted in some of the circuits, that the petition should set forth specifically the evidence of the existence of local prejudice. Foster, supra, p. 578; Inre Pennsylvania Co., supra; Malone v. R. R., 35 Fed., 625. If, therefore, the only contested point were whether the defendant had offered *Page 306 
sufficient proof of the existence of local prejudice, we would hold, without hesitation, that the plaintiff can contest that question only by a motion to remand made in the Federal court.
(397) The questions presented here, however, are, first, whether it was made to appear to the judge below that the Circuit Court of the United States would have jurisdiction to try the suit upon removal; second, whether on the failure of a petitioner to show from the affidavits and record the legal power of the Federal court, or where it appears affirmatively from inspecting them that the court in which the action is pending alone has cognizance, the State court, must, without contesting the right to subject litigants to the delay and expense incident to an appeal to the Supreme Court of the United States, submit to the usurpation of authority, send up the transcript and await the action of the appellate court for redress of the grievance.
It is settled beyond all reasonable controversy that the Federal tribunals can take jurisdiction not at the discretion of a circuit judge, but upon defendant's adducing not only proof satisfactory to such judge of the existence of local prejudice and influence, but at least prima facie
evidence that, both as to the parties and subject-matter, such court has the legal authority to order the removal and take cognizance of the suit. In our case one of the plain prerequisites to removal is that the petitioner shall show by affidavit, or the record, that all of the plaintiffs are "citizens of the State where the suit is brought." 20 A. 
E., 999; Foster, supra, 579; Pike v. Floyd, 42 Fed., 247; Niblack v.Alexander, 44 Fed., 306; Anderson v. Bowers, 43 Fed., 321; Young v. Parker,132 U.S. 267; Jefferson v. Driver, 117 U.S. 272.
Where causes have been inconsiderately removed to the circuit courts by order of the State courts on affidavits purporting but failing to show diverse citizenship, the Supreme Court has invariably remanded them to the circuit courts, with directions to send them back to the State courts, with costs. Stevens v. Nichols, 130 U.S. 230; Mansfield(398) R. R. Co. v. Swan, 111 U.S. 379; Gibson v. Bruce,108 U.S. 561.
The case of Young v. Parker, supra, was removed from the State court of West Virginia to the Circuit Court of the District of West Virginia upon the ground that the defendant petitioner would not be able to obtain justice on account of prejudice and local influence, and is, therefore, in point, except that it was a construction of Revised Statutes, 639. Fuller,C. J., delivering the opinion of the Court, said: "It was and is essential
in order to such removal, where there are several plaintiffs, or several defendants, that all of the necessary parties on the one side must be citizens of the State where the suit is brought, and all on the other side must be citizens of another State or States. *Page 307 
. . . It does not appear from either of these petitions and affidavits, or elsewhere in the record, that diverse citizenship, as to the parties therein named, existed at the time of the commencement of the suit, nor that diverse citizenship existed between the complainant and all the necessary defendants at the time the petition and affidavits were filed. The cause was not properly removed, and the State court has never lost jurisdiction." Stevens v. Nichols, supra; Cretrove v. R. R., 131 U.S. 240. So far as the principle involved in this appeal is affected, the only change made by the act of 1887, as amended by the act of 1888, was to limit the right of removal to the defendants and to require additional allegations in the petition or affidavit. 20 A. E., 999; Tullock v.Webster, 40 Fed., 706.
Since, therefore, the defendant sets forth in its petition the fact that the plaintiff is a citizen of Kentucky, and it appears from the statement of case on appeal that "the plaintiff was at the commencement of this action and now is a citizen and resident of the State of Kentucky," it is clear not only that the defendant has failed to show affirmatively what is essential to give the Federal court power to remove (399) and try, but that in fact the Federal court has never had and the State court has never been ousted of the jurisdiction to hear and determine the cause. The State court is not bound to stay proceedings; nor are its orders void except where the Circuit Court of the United States has rightfully assumed cognizance. The Supreme Court of the United States has repeatedly held, in that class of cases where the affidavit for removal must be filed in the State courts, that after the requisite bond and affidavit are filed "in a suit that is removable, the State court is absolutely divested of jurisdiction and its subsequent orders are coram nonjudice, unless its jurisdiction be in some form restored." Steamship Co. v.Tugman, 106 U.S. 118; Ins. Co. v. Dunn, 19 Wall., 214; Marshall v.Holmes, 141 U.S. 589.
But in all these cases it was conceded, either directly or by implication, that if the requisite petition and bond had not been filed, the State courts would still have had rightful cognizance to finally hear and determine the cause. In Steamship Co. v. Tugman, supra, the Court (at page 122) said: "The requirements of the law are met if the citizenship of the parties to the controversy sought to be removed is shown affirmatively by the record of the case." E converso, if the statute requires, as a prerequisite to removal, that the plaintiff shall be a citizen of the State in which the suit is brought, when it appears of record that he is a citizen and resident of a different State, the jurisdiction of the State court must remain undisturbed, and its orders made in the exercise of its rightful authority must be valid. In the earliest case in which this *Page 308 
doctrine was distinctly announced, Swayne, J., for the Court, said, in discussing the question whether the removal was made within the time prescribed by the statute, viz., before final trial: "It is (400) maintained by counsel for the administratrix that the order of removal by the common pleas was erroneously made, the first verdict and judgment being final within the meaning of the act of Congress and the laws of Ohio. If the point be well taken the judgment must be affirmed, otherwise reversed."
In Marshall v. Holmes, supra (cited by counsel for defendant), the Court said: "If under the act of Congress the cause was removable, then, upon the filing of the above petition and bond, it was in law removed, so as to be docketed in that court, notwithstanding the order of the State court refusing to recognize the right of removal."
In every case relied upon it will appear that the exclusive jurisdiction of the Federal court was made to depend on compliance with the act of Congress. The Federal court has no jurisdiction till the State court acts on a sufficient affidavit. Hall v. Chattanooga, 48 Fed., 599.
But in Stone v. South Carolina, 117 U.S. 430, Waite, C. J., lays down the rule for which the plaintiff contends in very clear and unmistakable language, when he says: "A State court is not bound to surrender its jurisdiction of a suit on petition for removal until a case has been made, which on its face shows that the petitioner has a right to the transfer. . . . If he fails in this, he has not in law shown to the court that it cannot proceed further with the suit. Having acquired jurisdiction, the court may proceed until it has been judicially informed that its power over the cause has been suspended. The mere filing of a petition for removal of a suit, which is not removable, does not work a transfer. To accomplish this the suit must be one that may be removed and the petition must show a right in the petitioner to demand removal. This being made to appear on record and the necessary security having been given, the power of the State court ends and that of the (401) circuit court begins." It is manifest, therefore, that under this rule the case is still pending in the State court, and its orders and proceedings must be respected until the Federal court shall make an order upon a petition or record showing at least prima facie its rightful authority to make it. Thompson v. R. R., 38 Fed., 673.
The Constitution and statutes made in pursuance thereof fix the bounds of the concurrent jurisdiction of the Federal courts and provide the machinery for a transfer where it is lawful to remove, but no judicial officer, however exalted his position, has the power to invest his own court with jurisdiction not recognized by law, or to suspend the legal authority which another court is rightfully exercising. An inadvertent *Page 309 
order of a Federal officer cannot, for the mere sake of harmonious action between the two governments, be allowed to subject suitors to needless delay in prosecuting causes before the proper tribunal in a State.
The case of Fisk v. Henarie, supra, establishes only what has been admitted, that it was within the discretion of the circuit court to pass upon the evidence of prejudice, but it has no bearing upon the other question, whether the action shall be considered as removed by an order of a Federal judge upon an affidavit plainly insufficient to authorize the order.
Upon a careful consideration of the authorities the refusal to remove is
AFFIRMED.
In Bowley v. same defendants: